IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BETTY FUNDERBURKE,

Plaintiff,

v. Civil Action No. 2:12-cv-00957

ETHICON, INC., ET AL.,

Defendant.

MEMORANDUM OPINION AND ORDER
(*Defendants' Motion for Summary Judgment*)

Pending before the court is a Motion for Summary Judgment [ECF No. 111] filed by defendants Ethicon Inc. and Johnson & Johnson (collectively "Ethicon") against plaintiff Betty Funderburke. As set forth below, Ethicon's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Defendants move for summary judgment on all of plaintiff's substantive claims and plaintiff opposes summary judgment only for negligence (Count I) and gross negligence (Count XIV).[1] Summary judgment is **GRANTED in part** with respect to Ms. Funderburke's claims for strict liability for manufacturing defect, strict liability for failure to warn, strict liability for defective product, strict liability for design defect, common law fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, negligent infliction of emotional distress, breach of express warranty, breach of implied

[1] Neither party addresses punitive damages (Count XVII) or discovery and rule tolling (Count XVIII). I do not make any rulings as to those issues.

warranty, violation of consumer protection laws, and unjust enrichment (Counts II through XIII and Count XV). Summary judgment is **DENIED in part** with respect to Ms. Funderburke's claims for negligent failure to warn and gross negligence (Counts I and XIV).

## I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 28,000 of which are in the Ethicon MDL. In an effort to efficiently and effectively manage this massive MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, the court ordered the plaintiffs and defendant to submit a joint list of 200 of the oldest cases in the Ethicon MDL that name only Ethicon, Inc., Ethicon, LLC, and/or Johnson & Johnson. These cases became part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 193, *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002327, Aug. 19, 2015, *available at http://www.wvsd.uscourts.gov/MDL/ethicon/orders.html*. This selection process was completed three times, creating three waves of 200 cases, Wave 1, Wave 2, and Wave 3. Ms. Funderburke's case was selected as a Wave 1 case.

Ms. Funderburke was surgically implanted with Prolift and TVT-O on December 31, 2008. (Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") [ECF No. 112], at 2). She is a resident of and received the surgery in North Carolina. (Defs.' Mem. at 4). Ms. Funderburke testified that she began feeling a "sticking" sensation starting roughly "two or three weeks" after the surgery. (Defs.' Mem. at 2). Ms. Funderburke returned to her doctor's office on March 27, 2009, complaining of a "burning sensation" and an uncomfortable sensation "as if 'stomach is moving.'" (Defs.' Mem. at 2). At that appointment, the doctor noted exposed mesh and recommended vaginal mesh revision surgery. (Defs.' Mem. at 2). Ms. Funderburke underwent a revision surgery on March 31, 2009, but she continued to experience "burning" and "sticking" sensations. (Defs.' Mem. at 3). Ms. Funderburke underwent two additional revision surgeries, one on January 14, 2010 and then on September 23, 2010. (Defs.' Mem. at 3).

Ms. Funderburke filed her original complaint in the Western District of North Carolina on March 22, 2012. (Defs.' Mem. at 3). Ethicon has moved for summary judgment on all of Ms. Funderburke's substantive claims. (Defs.' Mem. at 1).

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth

of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When

considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Funderburke filed this case in the Western District of North Carolina and it was transferred to the Southern District of West Virginia by order of the United States Judicial Panel on Multidistrict Litigation. (Conditional Transfer Order [ECF No. 3]).

Thus, the choice-of-law principles of North Carolina guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of North Carolina law. For tort claims, North Carolina generally applies the *lex loci delicti* approach, which provides that "the state where the injury occurred is considered the situs of the claim." *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722–23 (N.C. Ct. App. 2010). Here, the alleged injury occurred in North Carolina, where Ms. Funderburke was implanted with the allegedly defective device. Thus, I apply North Carolina's substantive law to the tort claims in this case. For warranty claims, North Carolina applies the "most significant relationship" approach, which "requires the forum to determine which state has the most significant relationship to the case." *Boudreau v. Baughman*, 368 S.E.2d 849, 853–54 (N.C. 1988). North Carolina courts have found that "the place of sale, distribution, delivery, and use of the product, as well as the place of injury . . . to be the state with the most significant relationship to the warranty claims." *Id.* at 855–56. Thus, I also apply North Carolina's substantive law to the warranty claims in this case.

## III. Analysis

Ethicon argues that it is entitled to summary judgment on Counts II through XIII and Count XV because Ms. Funderburke's claims lack either evidentiary or legal support. Ms. Funderburke does not offer any opposition to Ethicon's motion with regard to these counts. (Pl.'s Resp. in Opp'n to Defs.' Mot. For Summ. J.) ("Pl.'s Resp.") [ECF No. 113]. Ethicon's Motion for Summary Judgment is **GRANTED** as to Counts

II through XIII and Count XV. Ms. Funderburke opposes Ethicon's motion with regard to her negligence (Count I) and gross negligence (Count XIV) claims. (Pl.'s Resp. at 1). Below, I apply the summary judgment standard to each remaining claim.

A. Statute of Limitations

As a threshold matter, Ethicon argues that Ms. Funderburke's claims are barred because they accrued outside of the period prescribed by the applicable statute of limitations. "[W]hether a cause of action is barred by the statute of limitations is a mixed question of law and fact" unless the facts are not in conflict, in which case the question becomes one of law. *Pembee Mfg. Corp. v. Cape Fear Const. Co.,* 329 S.E.2d 350, 353 (N.C. 1985) (citations omitted). "Where, however, the evidence is sufficient to support an inference that the cause of action is not barred, the issue is for the jury." *Little v. Rose*, 208 S.E.2d 666, 668 (1974) (citations omitted). The parties agree that the applicable statute in this case is N.C. Gen. Stat. § 1-52, which provides a three-year period of limitations for personal injury claims sounding in negligence. *See* N.C. Gen. Stat. § 1-52; *Driggers v. Sofamor, S.N.C.*, 44 F. Supp. 2d 760, 766 (M.D.N.C. 1998). The statute provides, in relevant part: "[F]or personal injury or physical damage to claimant's property, the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant . . . ." N.C. Gen. Stat. Ann. § 1-52(16). At common law, a plaintiff's cause of action would accrue at the time of injury, regardless of the plaintiff's awareness of the injury. *Pembee*, 329 S.E.2d at 353. The purpose of the statute is to "modify the sometimes harsh common law rule by

protecting a potential plaintiff in the case of a latent injury by providing that a cause of action does not accrue until the injured party becomes aware or should reasonably have become aware of the existence of the injury." *Id.* at 354.

The issue in this case is whether Ms. Funderburke's alleged bodily harm became or should have become apparent to her during the limitations period. Ms. Funderburke testified that she began to feel a "sticking" sensation in the weeks following her December 31, 2008 surgery and reported this to her physician by January 26, 2009. (Defs.' Mem. at 6). Thus, Ethicon argues, her cause of action accrued no later than January 26, 2009 and the statute of limitations expired no later than January 26, 2012. The parties agree, however, that Ms. Funderburke's treating physician first noted areas of exposed mesh and recommended revision surgery on March 27, 2009, at which time Ms. Funderburke felt a burning sensation in her abdomen as well as an uncomfortable sensation described as feeling like her stomach was moving. (Defs.' Mem. at 2). If Ms. Funderburke's cause of action accrued on or around that time, then the statute of limitations would expire on or around March 27, 2012. Plaintiff commenced this action on March 22, 2012. (Defs.' Mem. at 3).

Ms. Funderburke asserts that there is a material question of fact as to whether her post-surgery sensation of "sticking" constitutes apparent bodily harm as opposed to "merely a post-surgical complaint that her implanting physician could address." (Pl.'s Resp. at 3–4). Plaintiff disputes both that bodily harm was in fact apparent to her and that it ought reasonably to have been apparent to her. (Pl.'s Resp. at 3). Defendants compare the facts of this case to those of *McCarver v. Blythe*, a North

Carolina state court decision. (Defs.' Mem at 5). In *McCarver*, a case about property damage, the court found that a defendant's counterclaim accrued when he visited the property because he testified that he noticed "that the porches and the roof were rotting, [and] that the boards needed replacing and roof needed 'sheathing.'" *McCarver v. Blythe*, 555 S.E.2d 680, 683 (N.C. Ct. App. 2001). However, unlike *McCarver* where the claimant admitted he was aware of visible property damage, in this case, Ms. Funderburke testified that she experienced some post-surgical discomfort as of January 26, 2009.

Viewing the record in the light most favorable to the nonmoving party, Ms. Funderburke, I **FIND** that a reasonable jury could determine that plaintiff's bodily harm was not apparent to her, and ought not have been reasonably apparent, at that time. Therefore, Ethicon's Motion for Summary Judgment is **DENIED** as to the statute of limitations issue.

**B. Negligent Failure to Warn**

Under North Carolina law, "[n]o manufacturer . . . shall be held liable in any product liability action for a claim based upon inadequate warning or instruction unless the claimant" can satisfy three requirements. N.C. Gen. Stat. § 99B-5(a). First, the claimant must establish "that the manufacturer . . . acted unreasonably in failing to provide such warning or instruction." *Id.* Second, the claimant must establish "that the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought." *Id.* Finally, the claimant must establish either of the following:

> (1) At the time the product left the control of the manufacturer . . . , the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer . . . knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant[; or] (2) After the product left the control of the manufacturer . . . , the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

*Id.*

Ethicon argues that, under subsection (c) of the same statute, the learned intermediary doctrine shields it from liability. (Defs.' Mem. at 9 (citing N.C. Gen. Stat. § 99B-5(c))). Subsection (c) provides: "[N]o manufacturer or seller of a prescription drug shall be liable in a products liability action for failing to provide a warning or instruction directly to a consumer if an adequate warning or instruction has been provided to the physician or other legally authorized person who prescribes or dispenses that prescription drug for the claimant . . . ." N.C. Gen. Stat. § 99B-5(c).

While I am not persuaded that the plain language of subsection (c) provides the basis for application of the learned intermediary doctrine to the instant case, "[t]here are indications that North Carolina courts would adhere to the learned intermediary doctrine" in matters of product liability. *Baraukas v. Danek Med., Inc.*, No. 6:97CV00613, 2000 WL 223508, at *4 (M.D.N.C. Jan. 13, 2000) (citing *Foyle ex rel. McMillan v. Lederle Labs.*, 674 F. Supp. 530, 535–36 (E.D.N.C. 1987)). In *Baraukas*, the United States District Court for the Middle District of North Carolina determined that the learned intermediary doctrine applied where the manufacturer

warned the plaintiff's physician about bone screws. *Id.* Accordingly, consistent with the courts that have addressed this issue before me, I assess Ms. Funderburke's negligent failure to warn claim under the learned intermediary doctrine.

Here, I **FIND** that genuine disputes of material fact exist with regard to: (1) whether Ethicon's warning was adequate; and (2) whether the alleged inadequate warning proximately caused the alleged harm to Ms. Funderburke. Therefore, Ethicon's Motion for Summary Judgment on Ms. Funderburke's negligent failure to warn claim is **DENIED**.

### C. Gross Negligence

The North Carolina Supreme Court has said the following with regard to ordinary negligence and gross negligence:

> [T]he difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others. An act or conduct moves beyond the realm of negligence when the injury or damage itself is intentional.

*Yancey v. Lea*, 550 S.E.2d 155, 158 (N.C. 2001) (emphasis omitted) (citing *Brewer v. Harris*, 182 S.E.2d 345, 350 (N.C. 1971)).

Ethicon asserts, without elaboration, that Ms. Funderburke has not presented sufficient evidence to establish the elements of gross negligence. (Defs.' Mem. at 18). Ms. Funderburke asserts that there is a dispute of fact as to whether Ethicon actively and intentionally misled the public by withholding information about product risks.

(Pl.'s Resp. at 11). Ethicon does not address this issue in its Reply to Pl.'s Resp. [ECF No. 126].

Viewing the facts in the light most favorable to Ms. Funderburke, I **FIND** that there is a material dispute of fact regarding the issue of gross negligence. Therefore, Ethicon's Motion for Summary Judgment on Ms. Funderburke's gross negligence claim is **DENIED.**

**IV. Conclusion**

For the reasons discussed above, it is **ORDERED** that Ethicon's Motion for Summary Judgment [ECF No. 111] is **GRANTED in part** with respect to Ms. Funderburke's claims for strict liability for manufacturing defect, strict liability for failure to warn, strict liability for defective product, strict liability for design defect, common law fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, negligent infliction of emotional distress, breach of express warranty, breach of implied warranty, violation of consumer protection laws, and unjust enrichment (Counts II through XIII and Count XV). Summary judgment is **DENIED in part** with respect to Ms. Funderburke's claims for negligent failure to warn and gross negligence (Counts I and XIV). The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 20, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE